Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Allstar Marketing Group, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTAR MARKETING GROUP, LLC, | **CIVIL ACTION No. ____** |
| *Plaintiff* | |
| v. | |
| 123 BEADS STORE, ACEVAN STORE, AS SEEN ON TV SHENZHEN STORE, ATHENE JEWELRY STORE, BEST STORE118, BITWBI STORE, BOOM BOOM STORE, BUYEEJEWELRY STORE, CAMPO VACCINO STORE, DROPSHIPPING STORE, ELAINE H STORE, ELIZABE YING BEAUTIFUL 1ST STORE, FATPIG OFFICIAL STORE, GADGET DROPSHIPPING STORE, GIEMI 925 STORE, GIEMI SILVER 925 STORE, HANGZHOU HISIR NETWORK & TECHNOLOGY CO., LTD., HAPPYJEWELRY STORE, HINTA DROPSHIPPING STORE, HUAXIANG STORE, JEXXI S925 STORE, KITCHENMALL STORE, MOONBIFFYJEWELRY STORE, NINGBO FULLYORK IMPORT AND EXPORT CO., LTD., NINGBO ONTIME IMP. & EXP. CO., LTD., NINGBO TIANNOY IMP. & EXP. CO., LTD., OUSHA STORE, ROMAD LOVER STORE, RUINPOP STORE, SHENGLIN FASHION ACCESSORIES, SHENZHEN BUYEE INDUSTRIAL DEVELOPMENT CO., LTD., SHENZHEN DAYWONS TECHNOLOGY CO., LIMITED, SHENZHEN ECCOSA JEWELRY CO., LTD., SHOP3060005 STORE, SHOP3651086 | **COMPLAINT**  **Jury Trial Requested**  **FILED UNDER SEAL** |

STORE, SHOP3682076 STORE, SHOP3873065 STORE, SHOP4378011 STORE, SHOP4573039 STORE, SUNNYBUY STORE, TRENDY LUCKYY STORE, YIWU BISHUN INDUSTRY TRADE CO., LTD., YIWU BOYE E-COMMERCE FIRM, YIWU CITY MJ JEWELRY CO., LTD., YIWU CITY TRENDZ ACCESSORIES CO., LTD., YIWU LAVENDER TRADING CO., LTD., YIWU NESSA FASHION JEWELRY CO., LTD., YIWU QUANMAI E-COMMERCE CO., LTD., YIWU SENSO HOUSEHOLD GOODS CO., LTD., YIWU SHANGJIE JEWELRY CO., LTD. and YIWU SKYSWEET JEWELRY FACTORY,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or "Allstar"** | Allstar Marketing Group, LLC |
| **Defendants** | 123 Beads Store, ACEVAN Store, As Seen On TV ShenZhen Store, Athene JEWELRY Store, best store118, BITWBI Store, Boom Boom Store, BuyeeJewelry Store, Campo Vaccino Store, Dropshipping Store, Elaine H Store, Elizabe Ying Beautiful 1st Store, Fatpig Official Store, Gadget Dropshipping Store, Giemi 925 Store, Giemi Silver 925 Store, Hangzhou Hisir Network & Technology Co., Ltd., HappyJewelry Store, Hinta Dropshipping Store, huaxiang Store, JEXXI s925 Store, KitchenMall Store, MOONBIFFYJewelry Store, Ningbo Fullyork Import And Export Co., Ltd., Ningbo Ontime Imp. & Exp. Co., Ltd., Ningbo Tiannoy Imp. & Exp. Co., Ltd., OUSHA Store, Romad Lover Store, RUINPOP Store, Shenglin Fashion Accessories, Shenzhen Buyee Industrial Development Co., Ltd., Shenzhen Daywons Technology Co., Limited, Shenzhen Eccosa Jewelry Co., Ltd., Shop3060005 Store, Shop3651086 Store, Shop3682076 Store, Shop3873065 Store, Shop4378011 Store, Shop4573039 Store, Sunnybuy Store, Trendy Luckyy Store, Yiwu Bishun Industry Trade Co., Ltd., Yiwu Boye E-Commerce Firm, Yiwu City MJ Jewelry Co., Ltd., Yiwu City Trendz Accessories Co., Ltd., Yiwu Lavender Trading Co., Ltd., Yiwu Nessa Fashion Jewelry Co., Ltd., Yiwu Quanmai E-Commerce Co., Ltd., Yiwu Senso Household Goods Co., Ltd., Yiwu Shangjie Jewelry Co., Ltd. and Yiwu Skysweet Jewelry Factory |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |

| NAL | New Alchemy Limited, a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling counterfeit products on online marketplace platforms |
|---|---|
| New York Addresses | 105 Avenue B, Apt 4B, New York, NY 10009; 510 East 86th St., New York, NY 10028; 20 Cooper Sq, New York, NY 10003; 47 W 13th St., New York, NY 10011; 60 Washington Square S, New York, NY 10012; 34 Windsor Ct, Brooklyn, NY 10314; 400 W 43rd St., New York, NY 10036 |
| Complaint | Plaintiff's Complaint filed on April 10, 2019 |
| Application | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on April 10, 2019 |
| De Marco Dec. | Declaration of Jennifer De Marco in Support of Plaintiff's Application |
| Arnaiz Dec. | Declaration of Jessica Arnaiz in Support of Plaintiff's Application |
| Scully Dec. | Declaration of Brienne Scully in Support of Plaintiff's Application |
| MagicBax Mark | U.S. Trademark Registration No. 5,587,958 for "MAGICBAX" for a variety of goods in Class 14 |
| MagicBax Works | U.S. Copyright Reg. VA 2-084-386, covering the MagicBax Retail Packaging (2017), U.S. Copyright Reg. VA 2-081-633, covering the MagicBax Instruction Manual, U.S. Copyright Reg. VA 2-081-623, covering the MagicBax Website (MagicBax.com), U.S. Copyright Reg. PA 2-069-686, covering the MagicBax Commercial |
| MagicBax Products | Earring backs that keep earrings in a perfect position all day long, which are perfect for bad piercings, stretched lobes and heavy earrings |
| Counterfeit Products | Products bearing or used in connection with the MagicBax Mark and/or MagicBax Works, and/or products in packaging and/or containing labels and/or hang tags bearing the MagicBax Mark and/or MagicBax Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the MagicBax Mark and/or |

| | MagicBax Works and/or products that are identical or confusingly or substantially similar to the MagicBax Products |
|---|---|
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are |

| | hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

Plaintiff Allstar, a New York corporation, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.       This action involves claims for trademark infringement of Allstar's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Allstar's federally registered trademark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.; and related common law claims arising from the infringement of the MagicBax Mark and MagicBax Works, including, without limitation, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of the MagicBax Products by Defendants.

## JURISDICTION AND VENUE

2.       This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq*.; pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.   This

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Complaint, Application or Glossary.

Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this action as to form part of the same case or controversy.

3.    Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Allstar in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

   a.  Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through User Accounts with online marketplace platforms such as Alibaba and AliExpress, as well as any and all as yet undiscovered User Accounts on other online marketplace platforms, through which consumers in the U.S., including New York, can view the one or more Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b. Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to consumers in the U.S., and specifically in New York.

c. Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Addresses.

e. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f. Upon information and belief, Defendants are aware of Allstar, its MagicBax Products, MagicBax Works and MagicBax Mark, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Allstar in the U.S. and specifically, in New York, as Allstar conducts substantial business in, and is headquartered in, New York.

4.   Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5. Plaintiff Allstar is a New York corporation, with a principal place of business at 2 Skyline Drive, Hawthorne, NY 10532.

6. Upon information and belief, Defendant 123 Beads Store is a merchant selling on AliExpress, at http://www.aliexpress.com/store/2791145, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

7. Upon information and belief, Defendant ACEVAN Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/2662191, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

8. Upon information and belief, Defendant As Seen On TV ShenZhen Store is a merchant selling on AliExpress, at https://zvkai.aliexpress.com/store/2561005, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

9. Upon information and belief, Defendant Athene JEWELRY Store is a merchant selling on AliExpress, at https://athene.aliexpress.com/store/2493007, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

10. Upon information and belief, Defendant best store118 is a merchant selling on AliExpress, at https://www.aliexpress.com/store/1482266, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

11. Upon information and belief, Defendant BITWBI Store is a merchant selling on AliExpress, at https://bitwbi.aliexpress.com/store/410002, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

12.     Upon information and belief, Defendant Boom Boom Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3281011, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

13.     Upon information and belief, Defendant BuyeeJewelry Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3477009, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

14.     Upon information and belief, Defendant Campo Vaccino Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/1958600, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

15.     Upon information and belief, Defendant Dropshipping Store is a merchant selling on AliExpress, at https://dropshipping.aliexpress.com/store/2190070, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

16.     Upon information and belief, Defendant Elaine H Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/1937173, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

17.     Upon information and belief, Defendant Elizabe Ying Beautiful 1st Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/1555415, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

18.     Upon information and belief, Defendant Fatpig Official Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/1294288, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

19.     Upon information and belief, Defendant Gadget Dropshipping Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3473017, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

20.     Upon information and belief, Defendant Giemi 925 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/2953137, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

21.     Upon information and belief, Defendant Giemi Silver 925 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/2964013, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

22.     Upon information and belief, Defendant Hangzhou Hisir Network & Technology Co., Ltd. is a merchant selling on Alibaba, at https://hisir.en.alibaba.com/, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

23.     Upon information and belief, Defendant HappyJewelry Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/4304028, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

24.     Upon information and belief, Defendant Hinta Dropshipping Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3155043, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

25.     Upon information and belief, Defendant huaxiang Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/2654189, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

26.     Upon information and belief, Defendant JEXXI s925 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/2957125, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

27.     Upon information and belief, Defendant KitchenMall Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3402012, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

28.     Upon information and belief, Defendant MOONBIFFYJewelry Store is a merchant selling on AliExpress, at https://moonbiffys.aliexpress.com/store/2948237, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

29.     Upon information and belief, Defendant Ningbo Fullyork Import And Export Co., Ltd. is a merchant selling on Alibaba, at https://fullyork.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

30.     Upon information and belief, Defendant Ningbo Ontime Imp. & Exp. Co., Ltd. is a merchant selling on Alibaba, at https://nbontime.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

31.     Upon information and belief, Defendant Ningbo Tiannoy Imp. & Exp. Co., Ltd. is a merchant selling on Alibaba, at https://nbtiannoy.en.alibaba.com, where it offers for

sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

32.     Upon information and belief, Defendant OUSHA Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3652079, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

33.     Upon information and belief, Defendant Romad Lover Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3622116, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

34.     Upon information and belief, Defendant RUINPOP Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/2952267, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

35.     Upon information and belief, Defendant Shenglin Fashion Accessories is a merchant selling on AliExpress, at https://www.aliexpress.com/store/1848156, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

36.     Upon information and belief, Defendant Shenzhen Buyee Industrial Development Co., Ltd. is a merchant selling on Alibaba, at https://buyeecn.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Guangdong, China (Mainland).

37.     Upon information and belief, Defendant Shenzhen Daywons Technology Co., Limited is a merchant selling on Alibaba, at https://daywons.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Guangdong, China (Mainland).

38.     Upon information and belief, Defendant Shenzhen Eccosa Jewelry Co., Ltd. is a merchant selling on Alibaba, at https://eccosa.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Guangdong, China (Mainland).

39.     Upon information and belief, Defendant Shop3060005 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3060005, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

40.     Upon information and belief, Defendant Shop3651086 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3651086, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

41.     Upon information and belief, Defendant Shop3682076 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3682076, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

42.     Upon information and belief, Defendant Shop3873065 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3873065, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

43.     Upon information and belief, Defendant Shop4378011 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/4378011, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

44.     Upon information and belief, Defendant Shop4573039 Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/4573039, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

45.     Upon information and belief, Defendant Sunnybuy Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3477022, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

46.     Upon information and belief, Defendant Trendy Luckyy Store is a merchant selling on AliExpress, at https://www.aliexpress.com/store/3663007, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

47.     Upon information and belief, Defendant Yiwu Bishun Industry Trade Co., Ltd. is a merchant selling on Alibaba, at https://bishun.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

48.     Upon information and belief, Defendant Yiwu Boye E-Commerce Firm is a merchant selling on Alibaba, at https://bygift.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

49.     Upon information and belief, Defendant Yiwu City MJ Jewelry Co., Ltd. is a merchant selling on Alibaba, at https://cnmj.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

50.     Upon information and belief, Defendant Yiwu City Trendz Accessories Co., Ltd. is a merchant selling on Alibaba, at https://a-beau.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

51.     Upon information and belief, Defendant Yiwu Lavender Trading Co., Ltd. is a merchant selling on Alibaba, at https://lavender-fashion.en.alibaba.com, where it offers for

sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

52.    Upon information and belief, Defendant Yiwu Nessa Fashion Jewelry Co., Ltd. is a merchant selling on Alibaba, at https://nessa.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

53.    Upon information and belief, Defendant Yiwu Quanmai E-Commerce Co., Ltd. is a merchant selling on Alibaba, at https://quanmai.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in Zhejiang, China (Mainland).

54.    Upon information and belief, Defendant Yiwu Senso Household Goods Co., Ltd. is a merchant selling on Alibaba, at https://sensowell.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

55.    Upon information and belief, Defendant Yiwu Shangjie Jewelry Co., Ltd. is a merchant selling on Alibaba, at https://shangjiejewelry.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

56.    Upon information and belief, Defendant Yiwu Skysweet Jewelry Factory is a merchant selling on Alibaba, at https://skysweet.en.alibaba.com, where it offers for sale and/or sells Counterfeit Products with a principal place of business in China (Mainland).

## GENERAL ALLEGATIONS

### Allstar and Its Well-Known Consumer Products

57.    Plaintiff is a leading developer, producer, marketer, and distributor of quality, innovative consumer products that Plaintiff promotes and sells throughout the United States and

the world through major retailers and well-known mass retail outlets, including, but not limited to: Wal-Mart, Target and Bed Bath & Beyond, as well as through its retail customers' websites and a network of international distributors, among other channels of trade.

58.     One of Allstar's most popular and successful products is the MagicBax Products, earring backs that keep earrings in a perfect position all day long, which are perfect for bad piercings, stretched lobes and heavy earrings.

59.     In addition to the channels described above, Allstar also markets and sells the MagicBax Products through its website entirely dedicated to the MagicBax Products, https://www.magicbax.com/. Images of the MagicBax Products are attached hereto as **Exhibit A** and incorporated herein by reference.

60.     The MagicBax Products have achieved great success and generally retail for $19.99.

61.     While Allstar has gained significant common law trademark and other rights in its MagicBax Products, through use, advertising and promotion, Allstar has also protected its valuable rights by filing for and obtaining a federal trademark registration.

62.     For example, Allstar owns the MagicBax Mark, including U.S. Trademark Registration No. 5,587,958 for "MAGICBAX" for a variety of goods in Class 14 with a constructive date of first use of December 13, 2017. A true and correct copy of the registration for the MagicBax Mark is attached hereto as **Exhibit B** and incorporated herein by reference.

63.     The MagicBax Mark is currently in use in commerce in connection with the MagicBax Products. The MagicBax Mark was first used in commerce on or before the date of first use as reflected in the registration attached hereto as Exhibit B.

64.     In addition, Allstar also owns the registered copyrights related to the MagicBax Products.

65.     For example, Allstar owns the MagicBax Works, including U.S. Copyright Reg. VA 2-084-386, covering the MagicBax Retail Packaging (2017), U.S. Copyright Reg. VA 2-081-633, covering the MagicBax Instruction Manual, U.S. Copyright Reg. VA 2-081-623, covering the MagicBax Website (MagicBax.com) and U.S. Copyright Reg. PA 2-069-686, covering the MagicBax Commercial. True and correct copies of the U.S. Copyright registration certificates for the MagicBax Works are hereto as **Exhibit C** and incorporated herein by reference.

66.     Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its MagicBax Products, MagicBax Mark and MagicBax Works.

67.     The success of the MagicBax Products is due in part to Plaintiff's marketing and promotional efforts. These efforts include advertising and promotion through television, Plaintiff's website, retailer websites, print and Internet-based advertising and placement of the MagicBax Products at dozens of authorized major retail outlets, both domestically and abroad, including New York.

68.     The success of the MagicBax Products is also due to its use of high-quality designs, materials and processes in making the MagicBax Products.

69.     Additionally, Plaintiff owes a substantial amount of the success of the MagicBax Products to its consumers and word-of-mouth buzz that its consumers have generated.

70.     Plaintiff's efforts, the quality of its MagicBax Products, its marketing, promotion and distribution efforts as well as the word-of-mouth buzz generated by its consumers

have made the MagicBax Products, MagicBax Mark and MagicBax Works prominently placed in the minds of the public. Retailers, retail buyers, consumers and members of the public have become familiar with the MagicBax Products and associate them exclusively with Plaintiff.

71.     As a result of such associations, Plaintiff, and its MagicBax Mark and MagicBax Works have acquired a valuable reputation and goodwill among the public.

72.     Plaintiff has gone to great lengths to protect its interests to the MagicBax Products, MagicBax Mark and MagicBax Works. No one other than Plaintiff and its authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the MagicBax Mark or MagicBax Works without the express permission of Plaintiff.

## Alibaba and AliExpress and Defendants' User Accounts

73.     Alibaba and AliExpress are online marketplace and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

74.     As some of the leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide.[2] International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2016, revenue from international retail sales grew by 25% on AliExpress to

---

[2]*See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

14

$342 million and 15% on Alibaba to $841 million.[3] The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[4] Additionally, according to *Business Insider*, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[5]

75.    As recently addressed in the *Wall Street Journal*, *Fortune* and the *New York Times*,[6] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[7] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba and AliExpress, as well as other online marketplace platforms, at a rampant rate.

76.    Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User

---

[3] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales*, DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.
[4] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.
[5] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.
[6] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes*, N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.
[7] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

15

Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

77.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

78.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

79.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## Defendants' Wrongful and Infringing Conduct

80.     Particularly in light of in light of Plaintiff's success with its MagicBax Products, as well as the reputation it has gained, Plaintiff and its MagicBax Product have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its MagicBax Products, MagicBax Works and MagicBax Mark and Plaintiff investigates and enforces against such activities.

81.     As part of these efforts, Plaintiff retained NAL and through NAL's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts. Printouts of the Infringing Listings from Defendants' User Accounts and

16

Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

82.    Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the MagicBax Products or to use the MagicBax Mark and MagicBax Works, or any marks or artwork that are confusingly or substantially similar to the MagicBax Mark or MagicBax Works.

83.    Defendants' Counterfeit Products are nearly indistinguishable from the MagicBax Products, only with minor variations that no ordinary consumer would recognize.

84.    NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through various payment processing services and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. NAL's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products which are included in **Exhibit D** attached hereto and incorporated herein by reference.

85.    For example, below on the left is an image of Plaintiff's MagicBax Products, which typically retails for $29.99. Depicted further below is a listing for Defendant 123 Beads Store's Counterfeit Product ("123 Beads Store Infringing Listing" and "123 Beads Store Counterfeit Product," respectively). The 123 Beads Store Infringing Listing appears on Defendant 123 Beads Store's Merchant Storefront, http://www.aliexpress.com/store/2791145, and offers the 123 Beads Store Counterfeit Product for $2.19-$4.99 per item, using, featuring

17

and/or incorporating one or more of the MagicBax Mark, the MagicBax Works, and/or confusingly or substantially similar marks or artwork in the listing title "Dropshipping **Magic Bax** Creative Rose Gold 2pcs Set Earring Backs Support Lifts Copper Hypoallergenic Fit Post Earrings For Women" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the 123 Beads Store Counterfeit Product is virtually identical to one of Plaintiff's MagicBax Products and features and/or incorporates one or more of the MagicBax Works and MagicBax Mark.   There is no question that the bigbigdream320 Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's MagicBax Products or that the 123 Beads Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the MagicBax Works and MagicBax Mark:

**MagicBax Product**                                     **Defendant's Counterfeit Product**



86.   NAL has confirmed that Defendant 123 Beads Store offers shipping to New York as shown in the completed checkout page for the 123 Beads Store Counterfeit Product directing shipment to one of the New York Addresses which is attached hereto as Exhibit D. Further, a screenshot of the 123 Beads Store Infringing Listing, depicted below, confirms that Defendant 123 Beads Store accepts payment in U.S. Dollars and ships the 123 Beads Store Counterfeit Product to the U.S.:



87.     As another example, below on the left is an image of one of the MagicBax Products, which typically retails for $29.99.  Depicted below on the right is the listing for Defendant ACEVAN Store's Counterfeit Product ("ACEVAN Store Infringing Listing" and "ACEVAN Store Counterfeit Product," respectively).  The Infringing Listing appears on Defendant ACEVAN Store's Merchant Storefront, https://www.aliexpress.com/store/2662191, and offers the ACEVAN Store Counterfeit Product for $1.89 per item, using, featuring and/or incorporating one or more of the MagicBax Mark, the MagicBax Works, and/or confusingly or substantially similar marks or artwork in the listing title "1 Pair **Magic Bax** Earring Wedding Jewelry Backs Hypoallergenic Fits all Post" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the ACEVAN Store Counterfeit Product is virtually identical to one of Plaintiff's MagicBax Products and features and/or incorporates one or more of the MagicBax Works and MagicBax Mark.  There is no question that the ACEVAN Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's MagicBax Products or that the ACEVAN Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the MagicBax Works and MagicBax Mark:

**MagicBax Product**

**Defendant's Counterfeit Product**





88.     NAL has confirmed that Defendant ACEVAN Store offers shipping to New York as shown in the completed checkout page for the ACEVAN Store Counterfeit Product directing shipment to one of the New York Addresses which is attached hereto as Exhibit D. Further, a screenshot of the ACEVAN Store Infringing Listing, depicted below, confirms that Defendant ACEVAN Store accepts payment in U.S. Dollars and ships the ACEVAN Store Counterfeit Product to the U.S.:



89.     By way of another example, below on the left is an image of one of the MagicBax Products, which typically retails for $19.99.  Depicted below on the right is the listing for Defendant Athene JEWELRY Store's Counterfeit Product ("Athene JEWELRY Store Infringing Listing" and "Athene JEWELRY Store Counterfeit Product," respectively).  The Infringing Listing

appears      on      Defendant      BITWBI      Store's      Merchant      Storefront,

https://bitwbi.aliexpress.com/store/410002, and offers the BITWBI Store Counterfeit Product for

$3.35 per item, using, featuring and/or incorporating one or more of the MagicBax Mark, the

MagicBax Works, and/or confusingly or substantially similar marks or artwork in the listing title

"1pair 925 Sterling Silver **Magic Bax** Brass Ear Stud Buckle New TV Earrings Stud Sterling Silver

Ear Plugs" (emphasis added) and in the descriptions and/or product images in the body of the

listing. Further, the BITWBI Store Counterfeit Product is virtually identical to one of Plaintiff's

MagicBax Products and features and/or incorporates one or more of the MagicBax Works and

MagicBax Mark. There is no question that the BITWBI Store Counterfeit Product is designed to

confuse and mislead consumers into believing that they are purchasing one of Plaintiff's MagicBax

Products or that the BITWBI Store Counterfeit Product is otherwise approved by or sourced from

Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the

unauthorized use of the MagicBax Works and MagicBax Mark:

**MagicBax Product**                    **Defendant's Counterfeit Product**



90.    NAL has confirmed that Defendant BITWBI Store offers shipping to New York as

shown in the completed checkout page for the BITWBI Store Counterfeit Product directing

shipment to one of the New York Addresses which is attached hereto as Exhibit D. Further, a

screenshot of the BITWBI Store Infringing Listing, depicted below, confirms that Defendant

BITWBI Store accepts payment in U.S. Dollars and ships the BITWBI Store Counterfeit Product to the U.S.:

**Sale Price:** US $3.35 / Pair **-26%**
Get our app to see exclusive prices ▾   Bulk Price ▾

**Color:**

**Shipping:** Free Shipping to United States via China Post Ordinary Small Packet Plus ▾
Estimated Delivery Time: **53 days**

**Quantity:** — 1 + Pair (200 Pair at most per customer)

**Total Price:** Depends on the product properties you select

91.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the MagicBax Mark and MagicBax Works, and have used marks, images and artwork that are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the MagicBax Mark and MagicBax Works in order to confuse consumers into believing that such Counterfeit Products are MagicBax Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the MagicBax Mark and MagicBax Works, after Plaintiff obtained the federal registration in the MagicBax Mark and MagicBax Works, as alleged above, and after Plaintiff's MagicBax Products, MagicBax Mark and MagicBax Works became well-known to the purchasing public.

92.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the MagicBax Mark and

MagicBax Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the MagicBax Products, and in bad faith adopted the MagicBax Mark and MagicBax Works.

93.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the MagicBax Mark, MagicBax Works and MagicBax Products.

94.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and have deceived and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

95.     In engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the MagicBax Mark, infringed the MagicBax Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

96.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting)
### [15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]

97.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

23

98.     Plaintiff is the exclusive owner of all right and title to the MagicBax Mark.

99.     Plaintiff has continuously used the MagicBax Mark in interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

100.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its MagicBax Mark and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the MagicBax Mark and/or used spurious designations that are identical with, or indistinguishable from, the MagicBax Mark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

101.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the MagicBax Mark through their participation in such activities.

102.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the MagicBax Mark to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing

24

that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

103. Defendants' unauthorized use of the MagicBax Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the MagicBax Mark.

104. Defendants' actions constitute willful counterfeiting of the MagicBax Mark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

105. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the MagicBax Mark and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable MagicBax Mark.

106. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

25

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

107.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108.     Plaintiff has continuously used the MagicBax Mark in interstate commerce since on or before the date of first use as reflected in the registration certificate attached hereto as **Exhibit B**.

109.     Allstar, as owner of all right, title and interest in and to the MagicBax Mark, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

110.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for the MagicBax Mark.

111.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the MagicBax Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell MagicBax Products and/or related products bearing the MagicBax Mark into the stream of commerce.

112.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the MagicBax Mark and/or which are identical or confusingly similar to the MagicBax Mark.

113.     Defendants knowingly and intentionally reproduced, copied and colorably

imitated the MagicBax Mark and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

114.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the MagicBax Mark.

115.     Defendants' egregious and intentional use of the MagicBax Mark in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are the MagicBax Products or are otherwise associated with, or authorized by, Plaintiff.

116.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the MagicBax Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

117.     Defendants' continued, knowing, and intentional use of the MagicBax Mark without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered MagicBax Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

118.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the MagicBax Mark and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff

27

has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable MagicBax Mark.

119.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

120.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.     Plaintiff, as the owner of all right, title and interest in and to the MagicBax Mark, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

122.     The MagicBax Mark is inherently distinctive and/or has acquired distinctiveness.

123.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of the MagicBax Mark and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause

mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are MagicBax Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the MagicBax Mark, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

124.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of the MagicBax Products using marks that are identical and/or confusingly or similar to, or which constitute colorable imitations of the MagicBax Mark, Defendants have traded off the extensive goodwill of Plaintiff and its MagicBax Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its MagicBax Mark, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

125.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly or substantially similar to and constitute reproductions of the MagicBax Mark would cause confusion, mistake or deception among purchasers, users and the public.

126.     Upon information and belief, Defendants' aforementioned wrongful actions

29

have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its MagicBax Products and MagicBax Mark.

127.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its MagicBax Products and by depriving Plaintiff of the value of its MagicBax Mark as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of MagicBax Mark.

128.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## (Federal Copyright Infringement)
## [17 U.S.C. § 501(a)]

129.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.     Plaintiff is the exclusive owner of the MagicBax Works.

131.     Defendants had actual notice of Plaintiff's exclusive rights in and to the MagicBax Works.

132. Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's MagicBax Products and/or MagicBax Works.

133. Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the MagicBax Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such MagicBax Works, or artwork that is, at a minimum, substantially similar to the MagicBax Works.

134. Defendants' unlawful and willful actions as alleged herein constitute infringement of the MagicBax Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such MagicBax Works in violation of 17 U.S.C. § 501(a).

135. Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

136. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

137. Plaintiff repleads and incorporates by reference each and every allegation set

forth in the preceding paragraphs as if fully set forth herein.

138.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its MagicBax Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

139.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

140.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

141.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its

32

competitive position while benefiting Defendants.

142.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its MagicBax Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its MagicBax Mark as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

143.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Allstar's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

### SIXTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

144.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

145.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

146.     Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15

U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered MagicBax Mark, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the MagicBax Works under 17 U.S.C. § 501(a);

34

F.     In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the MagicBax Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment

G.     For an award of damages to be proven at trial for common law unfair competition;

H.     For an award of damages in an amount to be proven at trial for unjust enrichment;

I.     For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

       i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      ii.   directly or indirectly infringing in any manner any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the MagicBax Mark and MagicBax Works;

     iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's trademarks, copyrights or other rights (whether now in

existence or hereafter created) including, without limitation, the MagicBax Mark and MagicBax Works, to identify any goods or services not authorized by Plaintiff;

iv. using any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the MagicBax Mark or MagicBax Works, or any other marks or artwork that are confusingly or substantially similar to the MagicBax Mark or MagicBax Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the

of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   secreting, destroying, altering, removing or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xii.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or

Order in this action;

xiii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiv.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xiii) above; and

J.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation, the MagicBax Mark or MagicBax Works, or bear any marks that are confusingly or substantially similar to the MagicBax Mark or MagicBax Works;

K.     For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation, the MagicBax Mark or MagicBax Works, or bear any marks that are confusingly or substantially similar to the MagicBax Mark or MagicBax Works pursuant to 15 U.S.C. § 1118;

38

L.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

M.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

N.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.      For Plaintiff's reasonable attorneys' fees;

P.      For all costs of suit; and

Q.      For such other and further relief as the Court may deem just and equitable.

### DEMAND FOR JURY TRIAL

Allstar respectfully demands a trial by jury on all claims.

Dated: April 10, 2019

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:

_____

Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:      (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*

39

*Allstar Marketing Group, LLC*

# EXHIBIT A







# EXHIBIT B

# United States of America

## United States Patent and Trademark Office

# MAGICBAX

**Reg. No. 5,587,958**

**Registered Oct. 16, 2018**

**Int. Cl.: 14**

**Trademark**

**Principal Register**

Allstar Marketing Group, LLC  (NEW YORK LIMITED LIABILITY COMPANY)
2 Skyline Drive
Hawthorne, NEW YORK 10532

CLASS 14: jewelry, namely, earrings and earring backs

FIRST USE 12-13-2017; IN COMMERCE 12-13-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-694,883, FILED 11-22-2017

Director of the United States
Patent and Trademark Office

1

# EXHIBIT C

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Perry Clyett*

Acting United States Register of Copyrights and Director

**Registration Number**

## VA 2-084-386

**Effective Date of Registration:**
January 23, 2018

---

## Title

**Title of Work:**  MagicBax Retail Packaging

## Completion/Publication

**Year of Completion:**  2017
**Date of 1st Publication:**  January 12, 2017
**Nation of 1st Publication:**  United States

## Author

- **Author:**  Allstar Marketing Group, LLC
**Author Created:**  photograph, Text
**Work made for hire:**  Yes
**Citizen of:**  United States

## Copyright Claimant

**Copyright Claimant:**  Allstar Marketing Group, LLC
2 Skyline Drive, Hawthorne, NY, 10532, United States

## Rights and Permissions

**Organization Name:**  Allstar Marketing Group, LLC
**Name:**  Jennifer De Marco
**Email:**  jenniferd@allstarmg.com
**Telephone:**  (914)593-6183
**Address:**  2 Skyline Drive
Hawthorne, NY 10532 United States

## Certification

**Name:**  Jennifer De Marco

**Date:**   January 12, 2018

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

**VA 2-081-633**

**Effective Date of Registration:**
January 05, 2018

---

## Title
_____

**Title of Work:**   MagicBax Instruction Manual

## Completion/Publication
_____

**Year of Completion:**   2017
**Date of 1st Publication:**   December 13, 2017
**Nation of 1st Publication:**   United States

## Author
_____

• **Author:**   Allstar Marketing Group, LLC
**Author Created:**   photograph, Text
**Work made for hire:**   Yes
**Citizen of:**   United States

## Copyright Claimant
_____

**Copyright Claimant:**   Allstar Marketing Group, LLC
2 Skyline Drive, Hawthorne, NY, 10532, United States

## Rights and Permissions
_____

**Organization Name:**   Allstar Marketing Group, LLC
**Name:**   Jennifer De Marco
**Email:**   jenniferd@allstarmg.com
**Telephone:**   (914)593-6183
**Address:**   2 Skyline Drive
Hawthorne, NY 10532 United States

## Certification
_____

**Name:**   Jennifer De Marco

**Date:**   January 05, 2018



## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

# VA 2-081-623

**Effective Date of Registration:**
January 05, 2018

---

## Title
_____

**Title of Work:**   MagicBax Website

## Completion/Publication
_____

**Year of Completion:**   2017
**Date of 1st Publication:**   December 13, 2017
**Nation of 1st Publication:**   United States

## Author
_____

- **Author:**   Allstar Marketing Group, LLC
  **Author Created:**   photograph, Text
  **Work made for hire:**   Yes
  **Citizen of:**   United States

## Copyright Claimant
_____

**Copyright Claimant:**   Allstar Marketing Group, LLC
2 Skyline Drive, Hawthorne, NY, 10532, United States

## Rights and Permissions
_____

**Organization Name:**   Allstar Marketing Group, LLC
**Name:**   Jennifer De Marco
**Email:**   jenniferd@allstarmg.com
**Telephone:**   (914)593-6183
**Address:**   2 Skyline Drive
Hawthorne, NY 10532 United States

## Certification
_____

**Name:**   Jennifer De Marco

Page 1 of 2

**Date:**   January 05, 2018

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## PA 2-069-686

**Effective Date of Registration:**
January 05, 2018

---

## Title

**Title of Work:** MagicBax Commercial

## Completion/Publication

**Year of Completion:** 2017
**Date of 1st Publication:** December 13, 2017
**Nation of 1st Publication:** United States

## Author

- **Author:** Allstar Marketing Group, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Allstar Marketing Group, LLC
2 Skyline Drive, Hawthorne, NY, 10532, United States

---

## Rights and Permissions

**Organization Name:** Allstar Marketing Group, LLC
**Name:** Jennifer De Marco
**Email:** jenniferd@allstarmg.com
**Telephone:** (914)593-6183
**Address:** 2 Skyline Drive
Hawthorne, NY 10532 United States

## Certification

**Name:** Jennifer De Marco

**Date:**   January 05, 2018