Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*
*Allstar Marketing Group, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTAR MARKETING GROUP, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> 123 BEADS STORE, ACEVAN STORE, AS SEEN ON TV SHENZHEN STORE, ATHENE JEWELRY STORE, BEST STORE118, BITWBI STORE, BOOM BOOM STORE, BUYEEJEWELRY STORE, CAMPO VACCINO STORE, DROPSHIPPING STORE, ELAINE H STORE, ELIZABE YING BEAUTIFUL 1ST STORE, FATPIG OFFICIAL STORE, GADGET DROPSHIPPING STORE, GIEMI 925 STORE, GIEMI SILVER 925 STORE, HANGZHOU HISIR NETWORK & TECHNOLOGY CO., LTD., HAPPYJEWELRY STORE, HINTA DROPSHIPPING STORE, HUAXIANG STORE, JEXXI S925 STORE, KITCHENMALL STORE, MOONBIFFYJEWELRY STORE, NINGBO FULLYORK IMPORT AND EXPORT CO., LTD., NINGBO ONTIME IMP. & EXP. CO., LTD., NINGBO TIANNOY IMP. & EXP. CO., LTD., OUSHA STORE, ROMAD LOVER STORE, RUINPOP STORE, SHENGLIN FASHION ACCESSORIES, SHENZHEN BUYEE INDUSTRIAL DEVELOPMENT CO., LTD., SHENZHEN DAYWONS TECHNOLOGY CO., LIMITED, SHENZHEN ECCOSA JEWELRY CO., LTD., SHOP3060005 STORE, SHOP3651086 STORE, SHOP3682076 STORE, SHOP3873065 STORE, SHOP4378011 STORE, SHOP4573039 STORE, SUNNYBUY STORE, TRENDY | **CIVIL ACTION No.** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY** <br><br> **FILED UNDER SEAL** |

LUCKYY STORE, YIWU BISHUN INDUSTRY
TRADE CO., LTD., YIWU BOYE E-COMMERCE
FIRM, YIWU CITY MJ JEWELRY CO., LTD.,
YIWU CITY TRENDZ ACCESSORIES CO., LTD.,
YIWU LAVENDER TRADING CO., LTD., YIWU
NESSA FASHION JEWELRY CO., LTD., YIWU
QUANMAI E-COMMERCE CO., LTD., YIWU
SENSO HOUSEHOLD GOODS CO., LTD., YIWU
SHANGJIE JEWELRY CO., LTD. and YIWU
SKYSWEET JEWELRY FACTORY,

*Defendants*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ............................................................... 3

III.  ARGUMENT ......................................................................................................... 3

A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .................. 3

      1.   **Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)** ................................................................................. 4

      2.   **Exercising Personal Jurisdiction Over Defendants Comports with Due Process** ...................................................................................... 7

B.    PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ................................................................. 8

      1.   **Plaintiff Will Suffer Irreparable Harm in the Absence of an Injunction Leaving Plaintiff with No Adequate Remedy at Law** ....... 10

      2.   **Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims** ....................................................................................................... 12

      3.   **Plaintiff is Likely to Prevail on Its Copyright Act Claims** ................. 13

          *a)*   *Plaintiff owns Valid Copyrights in the MagicBax Works* ............. 13

          *b)*   *Defendants Infringed the MagicBax Works* ................................... 13

      4.   **Plaintiff is Likely to Prevail on Its State Law Claims** .......................... 15

      5.   **The Balance of Hardships Favors Plaintiff** .......................................... 15

      6.   **Enjoining Defendants from Using the MagicBax Mark Will Serve the Public Interest** ....................................................................... 16

C.    **PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS** ......................................... 16

      1.   **Defendants' Assets Must be Frozen** ....................................................... 16

      2.   **Defendants' User Accounts and Merchant Storefronts Must be Frozen** ....................................................................................................... 18

D.    PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS ..................... 18

E.    PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY ........................................................................................................ 21

i

F.    PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE ................................................................................................ 21

IV.   CONCLUSION ............................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620
    (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). ..................................... 21

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y.
    Apr. 1, 2015) ...................................................................................................... 1, 18, 19

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ...................................................... 21

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS
    107733 (S.D.N.Y. Oct. 8, 2010) ...................................................................................... 17

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ............................................ 3, 4, 7, 8

*Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830
    (S.D.N.Y. May 4, 2004) ...................................................................................................... 7

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ...................................................................... 5

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ......................... 16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985) ........................................................... 8

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................................. 7

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ................................... 4, 5

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) .................................. 4, 5

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ......................... 11

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y.
    June 12, 2015) ...................................................................................................... 18, 19, 20

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) ........................................................ 21

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................................... 11

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008) .................... 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist.
    LEXIS 78088 (E.D.N.Y. June 4, 2012) .......................................................................... 5, 6

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000)) ......................... 10

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340 (1991) ....................................... 13

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ............... 12

*FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) ..................... 19

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)............................................................ 17

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ........................................ 4, 18

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784
(PKC) (S.D.N.Y. June 23, 2015) ...................................................................................... 1

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*,
No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017)............................................................. 1

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979).......................................................................... 1

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................................ 3

*JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ............. 1

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist.
LEXIS 153137 (S.D.N.Y. Oct. 24, 2012).......................................................................... 1

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011)............................................................................... 13

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005
U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ........................................................... 7

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)................................................ 3, 4

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016
U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ............................................................. 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d
Cir. 1992)......................................................................................................................... 10

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d
Cir. 2005)......................................................................................................................... 10

*Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ............................. 22

*Milliken v. Meyer*, 311 U.S. 457 (1940) ......................................................................................... 7

*Mint, Inc.*, 2011 U.S. Dist. LEXIS 49813..................................................................................... 13

*Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745,2015 U.S. Dist. LEXIS 18801
(E.D.N.Y. Feb. 17, 2015)................................................................................................. 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................. 20

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) ............... 15

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013
U.S. Dist. LEXIS 147835 (E.D.N.Y. Sep. 27, 2013)....................................................... 11

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 16

*National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824 (W.D.N.C. 2008)...................................................................................................................... 20

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226 (S.D.N.Y. Mar. 30, 2006).......................................................................................................................... 17

*Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492 (2d Cir. 1961) ........................................ 12

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sep. 24, 2013).......................................................................... 13

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11, 2011) .................................................................................................................................... 6

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017)......................................................................... 22

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) .......................................................................... 11

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8, 2009) ..................................................................................................................... 19

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006).................. 4

*Stora v. Don't Ask Why Outfitters*, 2016 U.S. Dist. LEXIS 170172 ........................................... 14

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ..................... 19, 20

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) .......................................................... 12

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) ......................................................................................................................... 15

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011); ............ 10

*Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014)................................................................................... 17

*Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101 (2d Cir. 2001).................................................... 13

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009)...................................................... 11

**Statutes**

15 U.S.C. § 1057(b) ..................................................................................................................... 12

15 U.S.C. § 1116(d)(1)(a) ........................................................................................................... 8, 9

15 U.S.C. § 1117(a) ..................................................................................................................... 17

17 U.S.C. § 410(c) ....................................................................................................................... 13

17 U.S.C. § 501(a) ....................................................................................................................... 13

Fed. R. Civ. P. 26(d)(1).............................................................................................................. 21

Fed. R. Civ. P. 4............................................................................................................ 7, 18, 19, 20

Fed. R. Civ. P. 65(b) ...................................................................................................................... 8

N.Y. C.P.L.R. § 302....................................................................................................................... 3

**Other Authorities**

The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents
    in Civil and Commercial Matters, November 15, 1965, Article........................................ 20

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or "Allstar"** | Allstar Marketing Group, LLC |
| **Defendants** | 123 Beads Store, ACEVAN Store, As Seen On TV ShenZhen Store, Athene JEWELRY Store, best store118, BITWBI Store, Boom Boom Store, BuyeeJewelry Store, Campo Vaccino Store, Dropshipping Store, Elaine H Store, Elizabe Ying Beautiful 1st Store, Fatpig Official Store, Gadget Dropshipping Store, Giemi 925 Store, Giemi Silver 925 Store, Hangzhou Hisir Network & Technology Co., Ltd., HappyJewelry Store, Hinta Dropshipping Store, huaxiang Store, JEXXI s925 Store, KitchenMall Store, MOONBIFFYJewelry Store, Ningbo Fullyork Import And Export Co., Ltd., Ningbo Ontime Imp. & Exp. Co., Ltd., Ningbo Tiannoy Imp. & Exp. Co., Ltd., OUSHA Store, Romad Lover Store, RUINPOP Store, Shenglin Fashion Accessories, Shenzhen Buyee Industrial Development Co., Ltd., Shenzhen Daywons Technology Co., Limited, Shenzhen Eccosa Jewelry Co., Ltd., Shop3060005 Store, Shop3651086 Store, Shop3682076 Store, Shop3873065 Store, Shop4378011 Store, Shop4573039 Store, Sunnybuy Store, Trendy Luckyy Store, Yiwu Bishun Industry Trade Co., Ltd., Yiwu Boye E-Commerce Firm, Yiwu City MJ Jewelry Co., Ltd., Yiwu City Trendz Accessories Co., Ltd., Yiwu Lavender Trading Co., Ltd., Yiwu Nessa Fashion Jewelry Co., Ltd., Yiwu Quanmai E-Commerce Co., Ltd., Yiwu Senso Household Goods Co., Ltd., Yiwu Shangjie Jewelry Co., Ltd. and Yiwu Skysweet Jewelry Factory |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |

| Epstein Drangel | Epstein Drangel LLP, counsel for Plaintiff |
|---|---|
| NAL | New Alchemy Limited, a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling counterfeit products on online marketplace platforms |
| New York Addresses | 105 Avenue B, Apt 4B, New York, NY 10009; 510 East 86th St., New York, NY 10028, 20 Cooper Sq, New York, NY 10003; 47 W 13th St., New York, NY 10011; 60 Washington Square S, New York, NY 10012; 34 Windsor Ct, Brooklyn, NY 10314; 400 W 43rd St., New York, NY 10036 |
| Complaint | Plaintiff's Complaint filed on April 10, 2019 |
| Application | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on April 10, 2019 |
| De Marco Dec. | Declaration of Jennifer De Marco in Support of Plaintiff's Application |
| Arnaiz Dec. | Declaration of Jessica Arnaiz in Support of Plaintiff's Application |
| Scully Dec. | Declaration of Brieanne Scully in Support of Plaintiff's Application |
| MagicBax Mark | U.S. Trademark Registration No. 5,587,958 for "MAGICBAX" for a variety of goods in Class 14 |
| MagicBax Works | U.S. Copyright Reg. VA 2-084-386, covering the MagicBax Retail Packaging (2017), U.S. Copyright Reg. VA 2-081-633, covering the MagicBax Instruction Manual, U.S. Copyright Reg. VA 2-081-623, covering the MagicBax Website (MagicBax.com), U.S. Copyright Reg. PA 2-069-686, covering the MagicBax Commercial |
| MagicBax Products | Earring backs that keep earrings in a perfect position all day long, which are perfect for bad piercings, stretched lobes and heavy earrings. |
| Counterfeit Products | Products bearing or used in connection with the MagicBax Mark and/or MagicBax Works, and/or products in packaging and/or containing labels and/or hang tags bearing the MagicBax Mark and/or MagicBax Works, and/or bearing or used in connection |

| | |
|---|---|
| | with marks and/or artwork that are confusingly or substantially similar to the MagicBax Mark and/or MagicBax Works and/or products that are identical or confusingly or substantially similar to the MagicBax Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong"), and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with |

| | any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

## I.    **INTRODUCTION**

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support of its *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Counterfeit Products.[1] Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiff requests that the Court grant its Application.

Alibaba and AliExpress are online marketplace platforms that allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York. (Scully Dec., ¶ 3.)  Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their respective User Accounts and Merchant Storefronts on the Third Party Service Providers. (Arnaiz Dec., ¶¶ 4, 10-13, Ex. A; De Marco Dec., ¶¶ 19-20; Scully Dec., ¶ 3.)  Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York. (Arnaiz Dec., ¶¶ 6-7, 10-16, Ex. A; De Marco Dec., ¶ 21; Scully Dec., ¶ 3.)  Third-party merchants, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection.  (Scully Dec., ¶¶ 12-14.)

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Complaint, Application or Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also, e.g., JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao,* No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

In fact, Defendants' User Accounts and Merchant Storefronts are either devoid of any or contain incomplete information regarding Defendants' true identities, locations and contact information, making it virtually impossible for Plaintiff to obtain independently. (Scully Dec., ¶¶ 23-24.)

Without Plaintiff's authorization or consent, Defendants were and/or currently are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (Arnaiz Dec., ¶¶ 10-16, Ex. A; De Marco Dec., ¶¶ 20-22; Scully Dec., ¶¶ 3, 17-19, Ex. A.) Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiff, when, in fact, they are not. (De Marco Dec., ¶ 26.)

Plaintiff's request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that they will transfer, conceal and/or destroy 1) the Counterfeit Products, 2) the means of making or obtaining such Counterfeit Products, 3) business records and 4) any and all other evidence relating to their infringing activities. (Scully Dec., ¶ 12.) Moreover, they will likely hide or dispose of Defendants' Assets. *Id.* In light of the foregoing, and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II. STATEMENT OF RELEVANT FACTS

The facts are contained in the factual declarations of Jennifer De Marco and Jessica Arnaiz and the attorney summarizing declaration of Brieanne Scully, plus accompanying exhibits. *See* De Marco Dec.; Arnaiz Dec.; Scully Dec.; Complaint, Exs. A-D. In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

## III. ARGUMENT

### A. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry. First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)). Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution. *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. §§ 302(a)(1).[4] Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

---

[3] Although Plaintiff acknowledges that it seeks multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiff respectfully submits this memorandum of law in support of its Application. Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiff respectfully submits that Defendants are also subject to jurisdiction under § 302(a)(3). *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008). *See also Allstar Marketing Group v. 158, et al.*, 18 Civ. 4101 (GHW) (S.D.N.Y. May 8, 2018) (Where, in a similar fact pattern, the Hon. Gregory H. Woods held that plaintiff's submissions provided a *prima facie* showing of personal jurisdiction over the individual defendants under N.Y. C.P.L.R. § 302(a)(3).). However, this alternative analysis is omitted for brevity. Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

## 1. **Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)**

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions ... tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted). The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted). Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id*.

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the

4

Internet." *Id.* Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by NAL for and Epstein Drangel's purchase of Counterfeit Products. (Arnaiz Dec., ¶¶ 8-17, Ex. A; Scully Dec., ¶ 22, Ex. B.) *See also Chloe*, 616 F.3d at 170.

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though Defendants do not control their [] 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).[5] Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* at *8.

Here, the fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used Alibaba and AliExpress "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)).

---

[5] *See also supra* fn. 2.

Moreover, the fact that Defendants are offering the Counterfeit Products through their Merchant Storefronts usually in wholesale quantities and always at significantly below-market prices coupled with the fact that most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through Alibaba and AliExpress, such that they are subject to jurisdiction. *Id.*

It is highly likely that Defendants have shipped Counterfeit Products to consumers in New York based on the following: 1) NAL completed a checkout page for an order of Counterfeit Products from each and every Defendant through an account associated with one of the New York Addresses and/or provided one of the New York Addresses as the shipping address, 2) Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants to New York, 3) all Defendants accept payment in U.S. dollars and 4) several of Defendants' Merchant Storefronts and User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S. that make up significant percentages of Defendants' total revenues (and are estimated, in several cases to be in the millions of dollars). (Arnaiz Dec., ¶¶ 8-17, Ex. A; Scully Dec. ¶¶ 19, 22, Ex. B.)

Nevertheless, whether a defendant physically shipped Counterfeit Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011). Plaintiff, Plaintiff's counsel and NAL have viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts. (Arnaiz Dec., ¶ 7; De Marco Dec., ¶ 21; Scully Dec., ¶¶ 17-19, Ex. A.)

6

NAL then completed checkout pages for Counterfeit Products by providing one of the New York Addresses as the shipping address.[6]   (Arnaiz Dec., ¶¶ 10-14, Ex. A.)   Further, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants into New York. (Scully Dec. ¶ 22, Ex. B.)   Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on Alibaba and AliExpress, NAL's completion of checkout pages with one of the New York Addresses, Epstein Drangel's purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within New York and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York.[7] (Arnaiz Dec., ¶¶ 8-14, Ex. A; Scully Dec., ¶ 22, Ex. B.)

## 2. **Exercising Personal Jurisdiction Over Defendants Comports with Due Process**

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).   Defendants intentionally directed activity towards the New York market, thereby purposefully availing

---

[6] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

[7] Plaintiff respectfully submits that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "prov5ides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985). *See Best Van Lines, Inc.*, 490 F.3d at 243. (Arnaiz Dec., ¶¶ 10-14, Ex. A; Scully Dec., ¶¶ 3, 5, 22, Ex. B.) Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

### B.   PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiff. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b). Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[8]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff

---

[8] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions. *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B).  As discussed below, Plaintiff meets each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[9]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. (Scully Dec., ¶¶ 12-14, 23-24.)  Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on Alibaba and AliExpress. (Arnaiz Dec., ¶¶ 6-7, Ex. A; De Marco Dec., ¶¶ 19-20; Scully Dec., ¶ 3.) The covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility.  The immediate and irreparable harm to Plaintiff's business and reputation, as well as to the goodwill associated with the MagicBax Mark and MagicBax Works, in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (De Marco Dec., ¶ 26.)

---

[9] Plaintiff has expressed its willingness to provide security in conjunction with the *ex parte* relief it seeks.  *See* [Proposed] Order, filed herewith.  Plaintiff has certified that it has not publicized this Application. (De Marco Dec., ¶ 28.) Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiff is not requesting a seizure order in this Application. (Scully Dec., ¶¶ 12-14, 23-24.)

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Plaintiff meets the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1. Plaintiff Will Suffer Irreparable Harm in the Absence of an Injunction Leaving Plaintiff with No Adequate Remedy at Law

Defendants' infringing activities must be stopped immediately to prevent any further harm to Plaintiff. Not only does Plaintiff stand to suffer lost profits as a result of Defendants' competing, substandard Counterfeit Products, Defendants' illicit activities destroy the inherent value of the MagicBax Mark and MagicBax Works, impair Plaintiff's reputation, dilute Plaintiff's brands and goodwill and negatively affect Plaintiff's relationships with its current customers as well as its ability to attract new customers. (De Marco Dec., ¶ 26.) While courts may no longer presume irreparable harm upon a finding of infringement, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540 (S.D.N.Y. 2011). Further, a plaintiff may still demonstrate that "on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82

(2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)).

This Circuit recognizes that irreparable harm sufficient to warrant a preliminary injunction exists where a defendant injected counterfeit versions of a plaintiff's products into the market. *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011). Here, Defendants have sold substandard Counterfeit Products that look remarkably similar, if not identical, to the MagicBax Products and which embody, bear and/or incorporate the MagicBax Mark and/or MagicBax Works and/or identical or confusingly and/or substantially similar marks and/or artwork, thereby resulting in lost sales and impairing Plaintiff's "reputation that it has achieved through the expenditure of considerable time and effort." *Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745, 2015 U.S. Dist. LEXIS 18801 at \*8 (E.D.N.Y. Feb. 17, 2015) (quoting *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 147835, at \*37 (E.D.N.Y. Sep. 27, 2013)). (De Marco Dec., ¶¶ 20-21, 23-26; Scully Dec., ¶¶ 17-18, Ex. A.)

Moreover, Defendants' counterfeiting and infringing activities deny Plaintiff of its fundamental right to control the quality of the goods sold under the MagicBax Mark and MagicBax Works. *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009). Defendants are offering their substandard Counterfeit Products in wholesale quantities and at significantly below-market prices with which Plaintiff cannot compete given the high-quality materials and construction necessary to manufacture the MagicBax Products. (De Marco Dec., ¶¶ 23-24; Scully Dec., ¶¶ 17-18, Ex. A.) S*ee also Zino Davidoff SA*, 71 F.3d 244.

Also, because Defendants' substandard Counterfeit Products are virtually indistinguishable from the MagicBax Products, not only could any injury to consumers that results from use of Defendants' substandard Counterfeit Products be attributed to Plaintiff, thereby causing

11

irreparable harm to Plaintiff in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but Plaintiff would also potentially be exposed to legal liability for any such injury to consumers. (De Marco Dec., ¶¶ 25-26; Scully Dec., ¶¶ 17-18, Ex. A.) Thus, this factor weighs heavily in Plaintiff's favor.

### 2.  Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

First, the U.S. Trademark Registration certificate submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the MagicBax Mark as well as Plaintiff's ownership of the same. 15 U.S.C. § 1057(b). (De Marco Dec., ¶ 8, Ex. B.)

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961). Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id.* at 383 (internal citations omitted).   Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Finally, because Plaintiff has shown that it is likely to prevail on its trademark counterfeiting and trademark infringement claims, it has also shown that it likely will prevail on its claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

### 3.  Plaintiff is Likely to Prevail on Its Copyright Act Claims

Under 17 U.S.C. § 501(a), in order to show likelihood of success on the merits of a copyright infringement claim, a given plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)).  As detailed below, Defendants have infringed upon the MagicBax Works.

#### a)  *Plaintiff owns Valid Copyrights in the MagicBax Works*

With respect to ownership, "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Mint, Inc.*, 2011 U.S. Dist. LEXIS 49813, at *6; *see also* 17 U.S.C. § 410(c). Thus, Plaintiff's certificates of registration for the MagicBax Works are *prima facie* evidence of the validity of the copyrights and the facts stated in such registrations. (De Marco Dec., ¶ 10, Ex. C.)

#### b)  *Defendants Infringed the MagicBax Works*

To establish infringement, "the copyright owner must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible [sic] elements of plaintiff's [work]." *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001).

A plaintiff may demonstrate actual copying "either by direct or indirect evidence." *P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) (internal citations omitted). "Indirect

copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying." *Id.*

A representative sample of side-by-side comparisons of Plaintiff's MagicBax Works to Defendants' Counterfeit Products and/or Defendants' Infringing Listings illustrates that Defendants are copying one or more of the MagicBax Works by reproducing and/or displaying substantially similar, if not identical, imitations of the MagicBax Works either embodied in the Counterfeit Products themselves and/or in connection with the offering for sale and/or sale of Counterfeit Products. (Arnaiz Dec., ¶ 6-7, Ex. A; De Marco Dec., ¶ 21-22; and Scully Dec., ¶ 17-18, Ex. A.) Defendants have taken the original and well-known elements of the MagicBax Works – comprised of the packaging of the MagicBax Products and associated artwork – and used the same and/or elements thereof in Defendants' Infringing Listings for their Counterfeit Products. (Scully Dec., ¶ 17-18, *Ex.* A.) Defendants' imitations of the MagicBax Works are virtually indistinguishable therefrom, which, coupled with Plaintiff's significant and widespread advertising efforts, show that Defendants unquestionably had "access" to the MagicBax Works. *See id.*; *Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813, at *7 (S.D.N.Y. May 9, 2011); and *Stora v. Don't Ask Why Outfitters,* 2016 U.S. Dist. LEXIS 170172, at *12 (E.D.N.Y. Dec. 7, 2016). Plaintiff has demonstrated, at a minimum, "evidence of a reasonable possibility of access" through its widespread use of its MagicBax Works as well as the extensive advertising and widespread distribution of the MagicBax Products. *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988). This demonstrates that Plaintiff's assertion of Defendants' access to the MagicBax Works is more than mere speculation.

Further, Defendants' infringing use of the MagicBax Works is clearly more than *de minimis*. Defendants have taken entire and/or core elements of the MagicBax Works and have

used these, or nearly identical replicas thereof, in connection with the advertising, marketing, distributing, offering for sale and/or sale of the infringing products. In many instances, Defendants have directly copied one or more of the individual components of the MagicBax Works and have used such elements together in Defendants' Infringing Listings. (Scully Dec., ¶ 17-18, Ex. A, and Arnaiz Dec., ¶ 6-7, Ex. A.) Thus, Plaintiff has established substantial similarity between the MagicBax Works and Defendants' imitations, and that Defendants copied the same. *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003). Accordingly, Plaintiff respectfully submits that it is likely to succeed on the merits of its copyright claims.

### 4.  Plaintiff is Likely to Prevail on Its State Law Claims

Because Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff has also shown a likelihood of success on its unfair competition and unjust enrichment claims under New York State law. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 5.  The Balance of Hardships Favors Plaintiff

The balance of hardships unquestionably and overwhelmingly favors Plaintiff. Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the MagicBax Mark and MagicBax Works and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the MagicBax Products. (De Marco Dec., ¶ 26.) Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities. "Indeed, to the extent defendants 'elect[] to build a business

15

on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

## 6. Enjoining Defendants from Using the MagicBax Mark Will Serve the Public Interest

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of the MagicBax Products bearing and/or sold in connection with the MagicBax Mark. (De Marco Dec., ¶¶ 24-25; Scully Dec., ¶¶ 17-18, Ex. A.)  Since Defendants have willfully and knowingly inserted substandard Counterfeit Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Defendants' Counterfeit Products. (Arnaiz Dec., ¶¶ 6-7, Ex. A; Scully Dec., ¶¶ 17-18, Ex. A.)

## C. PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1. Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting businesses, and Plaintiff's showing that it has a high likelihood of succeeding on the merits of all of its claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from their sales of Counterfeit Products. Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third Party Service

Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiff's right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[10]

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting,

---

[10] *See also, e.g., Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. (Arnaiz Dec., ¶¶ 6-17, Ex. A; De Marco Dec., ¶ 26.) *See also Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[11] Therefore, Plaintiff respectfully submits that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[12]

### 2. Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

### D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS

Fed. R. Civ. P. (4) governs service on Defendants in the instant matter since, upon

---

[11] *See also supra* fn. 2.

[12] Upon the entering of an asset freeze, Plaintiff also requests that the Court Order Defendants and/or the Financial Institutions and/or the Third Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

information and belief, they are located in China. While Defendants operate sophisticated commercial businesses, they are limited to correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet. (Arnaiz Dec., ¶¶ 8-9; Scully Dec., ¶ 12.) Plaintiff therefore respectfully requests that this Court issue an order granting it permission to serve each respective Defendant via the following combination of electronic methods: 1) registered electronic mail, 2) messaging through Defendants' User Accounts and 3) website publication.

Plaintiff may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015). Since third-party merchants on Alibaba and AliExpress, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, only partial, incomplete or no physical addresses whatsoever associated with the majority of Defendants' User Accounts, this is exactly the circumstance where the courts should exercise, as they previously have,[13] the authority to grant alternative methods of service. *Id.* "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Id.* [14]

---

[13] *See Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *6-7; *AW Licensing, LLC*, 2015 U.S. Dist. LEXIS 177101, at *18-19; *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *20 (S.D.N.Y. Mar. 7, 2013).

[14] Pursuant to Fed. R. Civ. P (4)(1), service may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of

In the instant matter, Plaintiff proposes using Outlook.com as well as RPost (www.rpost.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Scully Dec., ¶ 25.) Along with service via email, Plaintiff respectfully requests that the Court, in its discretion, permit service via website publication.[15]

Ultimately, service on Defendants by various electronic means comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950). None of the Defendants have disclosed their mailing addresses. (Scully Dec., ¶¶ 12-14, 23-24.) Due to Defendants' purposeful anonymity, service by email, with confirmation of delivery by RPost, messaging through Defendants' User Accounts and website publication is most likely to provide Defendants with proper notice of this action and Plaintiff's claims. *Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *7. Therefore, Plaintiff respectfully submits that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.[16]

---

Judicial and Extrajudicial Documents" ("Hague Convention"). Although China is a signatory to it, the Hauge Convention "shall not apply where the address of the person to be served with the document is not known." *See* Hague Convention, November 15, 1965, Article 1. Moreover, despite China's objection to service by postal channels under Article 10, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement. *Sulzer Mixpac AG*, 312 F.R.D. at 332.

[15] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

[16] Plaintiff also respectfully submits that the Court issue an order authorizing Plaintiff to serve the Financial Institutions and/or Third Party Service Providers with notice of the Court's order of the Application via electronic means prior to serving Defendants and with enough time for the Financial Institutions and/or Third Party Service Providers to comply with the Court's order to help expedite the process.

### E. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[17] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted). Regardless of which test, Plaintiff has established that it is entitled to the expedited discovery requested for good cause shown. *See id.* at 327. (De Marco Dec., ¶ 26; Scully Dec., ¶¶ 12-14, 23-24.)

### F. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Plaintiff respectfully submits the provision of security in the amount of $5,000 is sufficient. *Rovio*

---

[17] *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

*Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[18]

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted *ex parte* in its entirety.

Dated:  April 10, 2019

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:  _____

Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Allstar Marketing Group, LLC*

---

[18] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")